UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
———————————————————————x
LLEWEYLLN S. GEORGE,                       :
                                           :
                    Plaintiff,             :
                                           :
      - against -                          :         **OPINION AND ORDER**
                                           :         10 Civ. 9505 (ER)
                                           :
PATHWAYS TO HOUSING, INC., et al.,         :
                                           :
                    Defendants.            :
———————————————————————x

Pro Se Plaintiff Lleweylln S. George brings this action against Pathways to Housing, Inc. ("Pathways"), Georgia Boothe, Carla Mims, Alicia Lore, Ivette Montalto, John Doe (collectively, "Pathways Defendants"), the Westchester County Department of Community Mental Health and Desh Connors (the "County Defendants"), alleging violations of his First and Fourteenth Amendment rights by each named Defendant. Second Am. Compl. ("SAC") at 2 (Doc. 28). Plaintiff claims that as a result of Defendants' conduct, he suffers from anxiety, increased loss of sleep and appetite, severe depression and mental anguish. *Id.* at 3. Plaintiff seeks fifteen million dollars in compensatory damages and nine million dollars in punitive damages. *Id.* at 3-4.

Both sets of Defendants have now moved to dismiss the Second Amended Complaint pursuant to Fed. R. Civ. P. 12(b)(6) contending that Plaintiff either cannot or has not stated any cognizable claims against them and that the Court should not grant Plaintiff leave to replead his claims for a third time. For the reasons discussed below, Defendants' motions are GRANTED in full.

**I. Background**

   A. **Relevant Facts**

Pathways is a not-for-profit organization that provides supportive housing services to disabled homeless individuals pursuant to an agreement with Westchester County (the "County"), acting by and through its Department of Community Mental Health ("CMH"). Pathways Defs.' Mem. at 1 (Doc. 41); Decl. of Thomas A. Catalano, Ex. B (Doc. 40). Plaintiff, an African-American man, was referred to Pathways by CMH for the purpose of securing emergency housing. County Defs.' Mem. at 2 (Doc. 47). The circumstances surrounding the referral have not been described in any of the parties' filings.

Plaintiff alleges that between the months of May and June 2010, the Pathways Defendants "were seeking to house Plaintiff in apartments with very serious health and safety violations."[1] SAC at 2. Plaintiff claims that he "pointed out to Defendants, that they have a history of placing their white clients in clean and safe environments, while placing their black clients in drug and crime plagued neighborhoods, with regards [sic] to their well being [sic]."[2] *Id.* Plaintiff alleges that his housing application and signed agreement with Pathways were then wrongfully terminated, as a result of a conspiracy between Defendants Alicia Lore and Desh Connors, because of Plaintiff's complaints of discrimination on the basis of color.[3] *Id.* at 2-3.

Plaintiff claims that Defendants Carla Mims and Georgia Boothe, Lore's direct supervisors, were in a position to investigate and correct the possible violations and abuse about

---

[1] Plaintiff alleges that Pathways employees Ivette Montalto, John Doe and "Nelson" showed him the allegedly unsuitable apartments. SAC at 2. "Nelson" is not a Defendant in this case.

[2] Plaintiff does not identify the "Defendants" referenced in this allegation, and the Complaint does not contain any factual allegations regarding the substance of his statement to Defendants or the circumstances in which, or the time at which, the statement was made.

[3] The Complaint does not contain any factual allegations regarding the substance, context, or timing of Plaintiff's alleged complaints of discrimination on the basis of color.

which he allegedly complained, but "refused to abide by their own rules or policies." *Id.* at 3. Plaintiff did not clearly state which rules or policies Mims and Boothe are alleged to have violated; however, it appears that this allegation is a reference to the Pathways' Housing Termination Policy and the "Consumer Rights and Responsibilities" document that are included among Plaintiff's exhibits, George Decl., Ex. 1, at 3, 7 (Doc. 51-1), and referenced in the preceding paragraph of the Second Amended Complaint.  SAC at 2-3.

### B. Procedural Background

Plaintiff initiated this lawsuit *in forma pauperis* on September 13, 2010, alleging violations of the First and Fourteenth Amendments based on Defendants' failure to provide him with acceptable housing.  Doc. 2.

On December 23, 2010, the Honorable Loretta A. Preska issued an Order to Amend pursuant to 28 U.S.C. § 1915(e)(2)(B), based on Plaintiff's failure to meet the pleading requirements of Rule 8(a)(2) of the Federal Rules of Civil Procedure.  Doc. 5.  Chief Judge Preska explained that Plaintiff's initial complaint was deficient because he:  (1) had not clearly alleged how any individual defendant was personally involved in the wrongful acts against him; (2) had not alleged dates, times or locations of the alleged wrongdoing by any person; and (3) had not described clearly what actually happened to him.  *Id.* at 3.

Chief Judge Preska liberally construed Plaintiff's complaint as arising under 42 U.S.C. § 1983, but held that Plaintiff could not state such a claim based on a denial of housing benefits under either the Constitution or any federal statute.  *Id.* at 4-5.  To the extent Plaintiff had alleged that Defendants had discriminated against him when he sought housing, Chief Judge Preska liberally construed his claim as arising under the Fair Housing Act ("FHA") and granted Plaintiff leave to file an amended complaint to allege whether and how Defendants violated his rights

3

under the FHA. *Id.* at 5. Chief Judge Preska also granted Plaintiff leave to file an amended complaint to allege whether and how his Equal Protection rights were violated by any denial of public housing benefits. *Id.* at 5-6. Chief Judge Preska's Order specifically identified why Plaintiff's initial complaint had not adequately alleged FHA and Equal Protection claims, and directed Plaintiff to amend his complaint to include specific types of factual allegations that would satisfy the pleading requirements of Rule 8(a)(2), including: (1) a description of all relevant events, including what each defendant did or failed to do; (2) the dates and times of each relevant event or, if not known, the approximate date and time of each relevant event; (3) the location where each relevant event occurred; and (4) a description of how each defendant's acts or omissions violated Plaintiff's rights. *Id.* at 8. Chief Judge Preska's Order went on to explain that Plaintiff's amended complaint "must tell the Court <u>who</u> violated Plaintiff's federally protected rights; <u>what</u> facts show that his federally protected rights were violated; <u>when</u> such violation(s) occurred; <u>where</u> such violation(s) occurred; and <u>why</u> Plaintiff is entitled to relief." *Id.*

Plaintiff filed an Amended Complaint on January 4, 2011, again alleging that his First and Fourteenth Amendment rights were violated when the Pathways Defendants showed him apartments that were "too unsanitary and in need of serious repairs," and when Lore terminated Plaintiff's written agreement in retaliation for statements that Plaintiff made to her about Pathways' alleged history of racist practices. Doc. 9. Contrary to Chief Judge Preska's specific directions, Plaintiff's Amended Complaint did not allege any facts related to an FHA claim. By Order dated January 31, 2011, the Honorable Cathy Seibel, to whom this case was then assigned, dismissed Plaintiff's constitutional claims because Defendants are private parties. Doc. 10. Judge Seibel's Order, however, permitted Plaintiff to replead his claims for a second time. Judge

Seibel directed Plaintiff to allege facts related to an FHA claim and, if he chose to do so, facts supporting a claim under 42 U.S.C. § 1981 for discrimination on the basis of race in connection with the activity of entering into or enforcing a contract. *Id.* at 2-3. The Order further explained what Plaintiff was required to allege in his second amended complaint in order to adequately plead such claims. *Id.*

Plaintiff filed the Second Amended Complaint on September 14, 2011, again only alleging violations of the First and Fourteenth Amendments.[4] Doc. 28. Contrary to Judge Seibel's specific directions, the Complaint does not contain any new factual allegations related to an FHA claim or a claim arising under 42 U.S.C. § 1981. At a pre-motion conference before Judge Seibel, Plaintiff indicated that he wanted to go forward with the Second Amended Complaint (the "Complaint"), notwithstanding the deficiencies previously noted by Chief Judge Preska and Judge Siebel. Accordingly, Defendants were granted leave to file motions to dismiss the Complaint.

In opposing the instant motions, Plaintiff alleged for the first time that the Pathways Defendants violated the FHA without any further elaboration or allegations, Doc. 51 at 1, and that the County Defendants violated the FHA by shredding his housing application, and "subsequently denying [him] access to equal housing, in retaliation to [sic] my complaints about racial discrimination." Doc. 51 at 3.

## II. Legal Standard for Motion to Dismiss

On a motion to dismiss a complaint under Rule 12(b)(6), district courts are required to accept as true all factual allegations and to draw all reasonable inferences in the plaintiff's favor.

---

[4] The docket reflects the filing of a Second Amended Complaint on February 23, 2011, Doc. 11; however, that complaint was not served on Defendants. Thus, Judge Seibel granted Plaintiff an additional thirty days to re-file his Complaint in compliance with her Order dated January 31, 2011.

5

*Famous Horse Inc. v. 5th Ave. Photo Inc.,* 624 F.3d 106, 108 (2d Cir. 2010).  However, this requirement does not apply to legal conclusions.  *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009); *see also Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (same).  In order to satisfy the pleading standard set forth in Rule 8 of the Federal Rules of Civil Procedure, a complaint must contain sufficient factual matter to state a claim to relief that is plausible on its face.  *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 570).  "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."  *Id.*  Accordingly, a plaintiff is required to support his claims with sufficient factual allegations to show "more than a sheer possibility that a defendant has acted unlawfully."  *Id*.  "Where a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief."  *Id.* (quoting *Twombly*, 550 U.S. at 557) (internal quotation marks omitted).

The same standard applies to motions to dismiss *pro se* complaints.  *See Zapolski v. Federal Republic of Germany,* 425 Fed. App'x 5, 6 (2d Cir. 2011).  However, the Court remains obligated to construe a *pro se* complaint liberally, *Hill v. Curcione,* 657 F.3d 116, 122 (2d Cir. 2011), and to interpret a *pro se* plaintiff's claims as raising the strongest arguments that they suggest.  *Triestman v. Fed. Bureau of Prisons,* 470 F.3d 471, 474 (2d Cir. 2006).  In order to survive a motion to dismiss, a *pro se* plaintiff's pleadings still must contain "more than an unadorned, the-defendant-unlawfully-harmed me accusation."  *Iqbal*, 556 U.S. at 678.  A complaint that "tenders naked assertions devoid of further factual enhancement" will not suffice.  *Id.* (quoting *Twombly*, 550 U.S. at 557) (internal quotation marks omitted) (brackets omitted); *see also Triestman,* 470 F.3d at 477 ("[P]*ro se* status 'does not exempt a party from compliance

6

with relevant rules of procedural and substantive law.'") (quoting *Traguth v. Zuck,* 710 F.2d 90, 95 (2d Cir. 1983)).

**III. Section 1983**

The Court liberally construes Plaintiff's claims that Defendants sought to place him in apartments with very serious health and safety violations, and that they terminated his housing application in retaliation for his complaints of discrimination, as arising under 42 U.S.C. § 1983. In order to state a claim under section 1983, a plaintiff must allege that: (1) a right secured by the Constitution or federal law was violated by defendants; and (2) the alleged violation was committed by a person acting under color of state law. *Am. Mfrs. Mut. Ins. Co. v. Sullivan*, 526 U.S. 40, 49-50 (1999).

   **A. Pathways Defendants**

Plaintiff cannot bring a section 1983 claims against the Pathways Defendants because they are private actors and Plaintiff has not alleged that they were acting under color of state law or that there was otherwise state involvement related to his claims. *Ciambriello v. Cnty. of Nassau,* 292 F.3d 307, 323-24 (2d Cir. 2002); *see also Reaves v. Dep't of Veterans Affairs*, No. 08-CV-1624 (RJD), 2008 WL 2853255, at *2 (E.D.N.Y. July 22, 2008) (section 1983 claim involving claim of unfair treatment with respect to public housing could not be brought against the Salvation Army because a private organization and its staff members are not state actors).

Private conduct is only considered state action when "[t]he State has so far insinuated itself into a position of interdependence with [a private party] that it must be recognized as a joint participant in the challenged activity," *Burton v. Wilmington Parking Auth.*, 365 U.S. 715, 725 (1961),[5] or when a private entity is exercising a public function, that is, a power that is

---

[5] While Plaintiff alleges that Pathways Defendant Lore conspired with County Defendant Connors to terminate his housing application in retaliation for his complaint of discrimination, this conclusory assertion fails to even

7

traditionally the exclusive prerogative of the State. *Jackson v. Metro. Edison Co.*, 419 U.S. 345, 352-53 (1974). It is well established that the provision of low-cost supportive housing is not a "public function" within the meaning of section 1983, because "the provision of housing, for the poor or for anyone else, has never been the exclusive preserve [of] the state . . . ." *Young v. Halle Hous. Assocs., L.P.*, 152 F. Supp. 2d 355, 365 (S.D.N.Y. 2001); *see also Lindsey v. Normet*, 405 U.S. 56, 74 (1972) (there is no "constitutional guarantee of access to dwellings of a particular quality"); *Acevedo v. Nassau Cnty.*, 500 F.2d 1078, 1080-81 (1974) (county has no constitutional or statutory duty to provide low income housing).

Accordingly, the claims against the Pathways Defendants are properly dismissed pursuant to Rule 12(b)(6).

## B. County Defendants

### 1. CMH

As a municipal department that does not have a distinct legal identity apart from the municipality that created it, CMH is not a suable entity under New York law. *In re Dayton*, 786 F. Supp. 2d 809, 818-19 (S.D.N.Y. 2011). Because Plaintiff is proceeding *pro se* and Westchester County has notice of this action, the Court will construe the Complaint liberally to state a claim against the County, for the purpose of the instant motions.[6] *George v. Grace*

---

approach the close nexus required for a finding that Lore was acting under color of state law. Private actors "will not be held to constitutional standards unless 'there is a sufficiently close nexus between the State and the challenged action of the [private] entity so that the action of the latter may be fairly treated as that of the State itself.' Whether such a 'close nexus' exists . . . depends on whether the State 'has exercised coercive power or has provided such significant encouragement, either overt or covert, that the choice must in law be deemed to be that of the State.'" *Am. Mfrs. Mut. Ins. Co.*, 526 U.S. at 52 (quoting *Blum v. Yaretsky*, 457 U.S. 991, 1004 (1982)) (internal citations omitted); *see also Young*, 152 F. Supp. 2d at 364 ("[T]he crucial relationship for a finding of state action is between the governmental entity and the *action* taken by the private entity, not between the governmental entity and the private *actor*.").

[6] Since the Court has concluded that it would be futile to grant Plaintiff leave to amend his complaint for a third time, it is particularly appropriate to consider the merits of Plaintiff's claims as if the County had properly been

*Church Cmty. Ctr.*, No. 10 CV 5343(VB), 2012 WL 859703, at *2 (S.D.N.Y. Feb. 17, 2012). However, the Complaint contains no factual allegations respecting the involvement of CMH in any of the alleged wrongdoing.  Therefore, on that basis alone, Plaintiff has failed to state a plausible claim with respect to the County.

Additionally, a section 1983 claim can only be brought against a municipality if the plaintiff alleges that the execution of an official policy or custom is responsible for his injury. *Bd. of Cnty. Comm'rs of Bryan Cnty. v. Brown,* 520 U.S. 397, 403 (1997); *Monell v. Dep't of Soc. Servs. of City of N.Y.*, 436 U.S. 658, 691-94 (1978); *see also Connick v. Thompson*, --- U.S. ----, 131 S. Ct. 1350, 1360 (2011) ("A municipality or other local government may be liable under [§ 1983] if the governmental body itself 'subjects' a person to a deprivation of rights or 'causes' a person 'to be subjected' to such deprivation.") (citing *Monell*, 436 U.S. at 692). Although a plaintiff is not required to identify an express rule or regulation to make a *Monell* claim, "'a single incident alleged in a complaint, especially if it involved only actors below the policy-making level, does not suffice to show a municipal policy.'" *DeCarlo v. Fry,* 141 F.3d 56, 61 (2d Cir. 1998) (quoting *Ricciuti v. N.Y. City Transit Auth.,* 941 F.2d 119, 123 (2d Cir. 1991)).

There are no allegations in the Complaint to support a *Monell* claim.  Plaintiff has neither identified nor proffered any evidence of a specific municipal policy or custom that is responsible for his purported injuries.  Plaintiff has also failed to demonstrate a policy by circumstantial evidence, such as a pattern of similar constitutional violations. *See, e.g.*, *Connick*, 131 S. Ct. at 1360-61. While Plaintiff alleges that he complained to Defendants about their "history" of treating their black clients differently than their white clients with respect to the housing environments in which those clients were placed, SAC at 2, this vague and conclusory assertion

---

named as a Defendant rather than CMH.  *Jones v. Dep't of Hous. Pres. & Dev.,* No. 06 Civ. 2085(LAP), 2007 WL 582751, at *3 n.5 (S.D.N.Y. Feb. 22, 2007).

9

is insufficient to establish *Monell* liability. *See, e.g.*, *Manganiello v. City of New York*, No. 07 Civ. 3644(HB), 2008 WL 2358922, at *10 (S.D.N.Y. June 10, 2008) ("the 'mere assertion that a municipality has [] a policy is insufficient to establish *Monell* liability'") (quoting *Perez v. City of New York,* 97 Civ. 2915, 2002 WL 398723, at *2 (E.D.N.Y. Mar. 14, 2002)). Moreover, it is not clear from the Complaint whether Plaintiff even intends to attribute this "history" to the County, since the Pathways Defendants were responsible for showing Plaintiff the allegedly unsuitable apartments. SAC at 2; *see also* County Defs.' Mem at 2 n.3 ("CMH does not locate or provide housing to eligible clients. Rather, it refers eligible clients, like Plaintiff, to agencies, like Pathways to Housing, who provide residential services to these clients."); *see also id.* at 2 n.4 (same). Therefore, Plaintiff has failed to adequately plead a section 1983 claim against the County.

### 2. Desh Connors

A plaintiff seeking to impose personal liability on an individual defendant under section 1983 is required to specifically allege that the individual was personally involved in causing the alleged constitutional violation while acting under color of state law. *Hafer v. Melo,* 502 U.S. 21, 25 (1991); *see also Gaston v. Coughlin,* 249 F.3d 156, 164 (2d Cir. 2001) ("Proof of an individual defendant's personal involvement in the alleged wrong is, of course, a prerequisite to his liability on a claim for damages under § 1983."). In the absence of such involvement, an individual defendant may not be held personally liable.

Plaintiff has not claimed that Connors was personally involved in *any* alleged constitutional violations or that Connors engaged in *any* conduct while acting under color of state law, and the Complaint does not contain *any* factual allegations that would support such a claim. Plaintiff's allegation that Connors conspired with Lore to terminate Plaintiff's housing

application in retaliation for Plaintiff's complaints of discrimination, alone, is insufficient to plead a First Amendment retaliation claim.  Further, even if Plaintiff had adequately alleged a First Amendment claim, Plaintiff failed to allege that Connors was acting under color of state law, as required to make such a claim actionable under section 1983.  Therefore, Plaintiff has not stated a section 1983 claim against Connors.

### IV. FHA Claim

The FHA prohibits discrimination "against any person in the terms, conditions, or privileges of sale or rental of a dwelling, or in the provision of services or facilities in connection therewith, because of race, color, religion, sex, familial status, or national origin." 42 U.S.C. § 3604(b).  In dismissing Plaintiff's first two complaints, Chief Justice Preska and Judge Seibel both granted Plaintiff leave to amend his complaint to state a claim under the FHA, and both Orders to Amend provided Plaintiff with clear and specific instructions as to how to adequately allege an FHA violation.

The Complaint does not contain any allegations that Defendants violated the FHA or any facts related to an FHA claim.   In opposing the instant motions, Plaintiff asserted that Defendants violated the FHA but did not provide any factual allegations to support such a claim.[7]  Although Plaintiff does identify his race in the Complaint, he does not clearly allege that any of the Defendants discriminated against him based on his race or color in either the Complaint or his opposition papers.  Plaintiff claims that he complained about Defendants' history of discriminatory practices, and that Connors and Lore retaliated against him for making

---

[7] Because of Plaintiff's *pro se* status, it is appropriate to consider factual allegations in his opposition papers as supplementing the Complaint, at least to the extent they are consistent with the allegations in the Complaint. *Shipman v. N.Y. State Office of Persons with Dev. Disabilities*, No. 11 Civ. 2780(GBD)(FM), 2012 WL 897790, at *4 (S.D.N.Y. Mar. 13, 2012); *see also Gill v. Mooney,* 824 F.2d 192, 195 (2d Cir. 1987) (considering allegations contained in *pro se* plaintiff's affidavit submitted in opposition to motion to dismiss).

complaints of discrimination, but Plaintiff does not describe the substance of his purported complaints of discrimination or the discriminatory events directed at him about which he allegedly complained. Thus, Plaintiff did not "clarify the factual basis of his claim of discrimination" as he was directed to do in Judge Seibel's Order.

In his opposition papers, Plaintiff merely asserts that Defendants violated the FHA and cites to a single district court case from outside this Circuit which is inapposite, because the plaintiffs in that case alleged that the executive director and chairman of the board of a not-for-profit shelter violated the FHA when they "made it known to [plaintiffs] that their ability to stay at the shelter and receive the other assistance that the shelter provided was dependent upon their willingness to provide sexual favors to [defendants]," and then made unwanted sexual advances and pressured plaintiffs to engage in sexual acts. *Woods v. Foster*, 884 F. Supp. 1169, 1171-72 (N.D. Ill. 1995). This is insufficient to survive a 12(b)(6) motion to dismiss. Thus, for a third time, Plaintiff has failed to state an FHA claim.

**V. Section 1981 Claim**

Judge Seibel also granted Plaintiff leave to file a claim under 42 U.S.C. § 1981, and set forth the allegations that Plaintiff was required to include in the Complaint to adequately plead such a claim. Doc. 10 at 2-3. A plaintiff alleging a violation of section 1981 must establish that: (1) he is a member of a racial minority group; (2) the defendant intended to discriminate against plaintiff on the basis of race; and (3) the discrimination concerned an activity enumerated in the statute, such as making and enforcing contracts. *Johnson v. City of New York*, 669 F. Supp. 2d 444, 449 (S.D.N.Y. 2009). "'In order to survive a motion to dismiss, the events of the intentional and purposeful discrimination, as well as the racial animus constituting the motivating factor for the defendant's actions must be specifically pleaded in the complaint.'" *Grimes v. Fremont Gen.*

*Corp.*, 785 F. Supp. 2d 269, 296 (S.D.N.Y. 2011) (quoting *Dove v. Fordham Univ.,* 56 F. Supp. 2d 330, 338 (S.D.N.Y. 1999)).  Conclusory allegations of racially motivated animus are insufficient.  *Yusuf v. Vassar Coll.*, 35 F.3d 709, 713 (2d Cir. 1994).

Here, Plaintiff has identified *no* circumstances and has pleaded *no* facts to give rise to *any* inference of racially discriminatory intent.  Plaintiff has not even alleged that Defendants were motivated by discriminatory animus.  Therefore, he has failed to state a claim under section 1981.

## VI. Dismissal Without Leave to Amend[8]

As a general rule, leave to amend a complaint should be freely granted.  *Jin v. Metro. Life Ins. Co.,* 310 F.3d 84, 101 (2d Cir. 2002).  District courts have broad discretion in deciding whether to grant leave to amend.  *Holmes v. Grubman*, 568 F.3d 329, 334-35 (2d Cir. 2009).  However, where the amendment would be futile or would result in undue prejudice to the opposing party denying leave to amend is proper.  *Id*. at 334.

An amendment is considered futile where the plaintiff is unable to demonstrate that he would be able to cure the defects in a manner that would survive a motion to dismiss.  *Hayden v. Cnty. of Nassau*, 180 F.3d 42, 53-54 (2d Cir. 1999).  Here, Plaintiff has had two opportunities to amend his complaint pursuant to orders from two federal judges that contained specific directions as to what Plaintiff was required to plead for his claims to survive.  Plaintiff failed to follow the directions contained in those orders; the Second Amended Complaint suffers from the same defects as the initial complaint and the amended complaint.  Plaintiff has not alleged any facts that would give rise to a cognizable claim under section 1983, section 1981 or the FHA; therefore, leave to amend the Complaint for a third time would be futile.  *Cuoco v. Moritsugu*,

---

[8] While Plaintiff has not sought leave to replead, the Court addresses this question *sua sponte* because he is appearing *pro se*.

222 F.3d 99, 112 (2d Cir. 2000) ("The problem with [plaintiff's] causes of action is substantive; better pleading will not cure it. Repleading would thus be futile. Such a futile request to replead should be denied."); *see also Wilson v. Wilson-Polson*, No. 09 Civ. 9810(PGG), 2010 WL 3733935, at *10 (S.D.N.Y. Sept. 23, 2010) (denying leave to amend based on futility because *pro se* plaintiff's claims were subject to "fundamental flaws not subject to cure"); *Reaves v. Dep't of Veterans Affairs*, No. 08-CV-1624 (RJD), 2009 WL 35074, at *3 (E.D.N.Y. Jan. 6, 2009) (declining to give *pro se* plaintiff leave to amend complaint for a second time because defendants were not state actors who could be subject to a § 1983 claim).

Moreover, allowing Plaintiff to amend his Complaint for a *third* time would be unduly prejudicial to Defendants who have already expended significant time and resources to brief the instant motions to dismiss the Second Amended Complaint. *Johnson*, 669 F. Supp. 2d at 453-54 (denying leave to amend *pro se* plaintiff's complaint in part because of undue prejudice to defendants). Therefore, the Second Amended Complaint will be dismissed without granting leave to amend.

## VII. Conclusion

For the reasons set forth above, Defendants' motions to dismiss are GRANTED in full. This action is dismissed with prejudice. The Clerk of the Court is respectfully directed to close this case.

It is SO ORDERED.

Dated: June 29, 2012
       White Plains, New York

                                          Edgardo Ramos, U.S.D.J.